## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| BRIAN HAUGER, individually and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>SDWC FINANCIAL, LLC, a Florida )<br>limited liability corporation, and )<br>MEREDITH BRUCE, a Georgia individual, )<br>)<br>Defendants. ) | Civil Action Case No.<br><br>1:25-cv-01058-VMC |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants SDWC Financial, LLC ("SDWC") and Meredith Bruce ("Bruce") submit this Memorandum of Law in Support of their motion to dismiss Plaintiff Brian Hauger's Complaint [Doc. 1] pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff Brian Hauger, an individual investor, alleges he was a victim of a Ponzi scheme devised by non-parties Drive Planning, LLC ("Drive Planning"), and its founder, Russell Todd Burkhalter ("Burkhalter"). He alleges Drive Planning and Burkhalter sold investment vehicles to unsuspecting investors with promises of high returns, while using the money to fund Burkhalter's lavish lifestyle and to make return payments to prior investors. Exhibits B-H of Plaintiff's Complaint are

a series of promissory notes between Drive Planning (signed by Burkhalter) and Plaintiff. Defendants are not signatories. The Complaint is replete with allegations of wrongdoing against Drive Planning and Burkhalter with only sparse allegations against Defendants.

Because of a pending Securities and Exchange Commission ("SEC") action against Drive Planning and Burkhalter, however, Plaintiff is barred from suing the alleged perpetrators of this scheme. With no one else to recover his alleged losses from, Plaintiff has filed this putative class action against Meredith Bruce, an outside salesperson who was herself duped into buying and selling Drive Planning investments, and Bruce's company SDWC.

Despite creative attempts to link Defendants to the harm alleged, Plaintiff fails to plausibly allege these claims in the Complaint. Plaintiff fails to meet threshold pleading requirements for state and federal securities claims. Plaintiff also fails to provide notice as to which facts support which counts.

Plaintiff fails to detail the role Defendants played, and by extension, their purported legal duty to him. Instead, Plaintiff uses a laundry list of titles to classify Defendants (everything from "broker-dealers" to "private placement agents") to advance various legal theories against them. Plaintiff's class allegations similarly fail because the claims require individualized determinations and are not suitable to be resolved in a class action. Plaintiff's claims should be dismissed.

## **ALLEGATIONS OF THE COMPLAINT**

The Complaint alleges that in 2020, Burkhalter and Drive Planning began offering Real Estate Acceleration Loans ("REAL") to investors. Compl. ¶ 9. Drive Planning and Burkhalter told investors the REAL loans would fund bridge loans and joint ventures with property developers, to generate a profit. *Id.* ¶¶ 25; 35.

The REAL loans were documented with promissory notes signed by Burkhalter providing that the principal balance of the loan plus 10% simple interest would be payable to the investor within three months. *See* Compl. Exs. B-H. At the end of the three-month term, investors could request full repayment of the note, roll over their investment into a new three-month investment, or add additional funds to an existing investment. *Id.* ¶ 22.

According to the SEC, between September 2020 and June 2024, Burkhalter and Drive Planning raised more than $372 million from more than 2,500 investors. *Id.* ¶ 19. But Drive Planning was not generating sufficient income from loans to or joint ventures with property developers to meet its repayment obligations to its investors. *Id.* ¶¶ 26; 29. As a result, Drive Planning primarily used new investment funds to repay earlier investors. *Id.* ¶ 28. Burkhalter also used investor funds to "maintain a luxurious lifestyle." *Id.* ¶ 36.

The SEC has charged Drive Planning and Burkhalter in a case styled *SEC v. Drive Planning, LLC and Russell Todd Burkhalter,* No. 1-24-03583 (N.D. Ga.

2024). *Id.* ¶ 2. They are not named in this action because an injunction prohibits Plaintiff from suing them. *Id.* ¶ 3. Instead, Plaintiff Brian Hauger has sued SDWC and its principal, Bruce, on behalf of himself and a proposed class of investors who invested with Drive Planning through SDWC or Bruce. *Id.* ¶¶ 4; 64.

Plaintiff alleges that Bruce, through SDWC, encouraged him to make multiple REAL loans between July 2023 and June 2024. *Id.* ¶¶ 42-49. He alleges that Bruce and SDWC distributed Drive Planning marketing materials and promoted the REAL loans without conducting "due diligence to confirm that returns promised to investors were actually being paid from proceeds identified on [Drive Planning's] marketing materials." *Id.* ¶ 37. Plaintiff also alleges that Bruce told him the REAL loans were secure. *Id.* ¶¶ 40-42.

The text messages attached as Exhibit J [Doc. 1-10] to the Complaint tell a different story. This is not a case of an aggressive salesperson pushing an investment on an unsuspecting victim. The texts reveal Plaintiff eagerly sending more and more money to Drive Planning:

| 07/17/2023 1:17:53 PM Hauger to Bruce | …Would like to discuss getting set up in real program with an initial amount of like 30k to build my trust in it and see paperwork, then I'll be ready to jump in more aggressively with the next term. Thats where my heads at.. |
| --- | --- |
| 08/10/2023 4:07:40 PM Hauger to Bruce | …I've reached out to my $ guy and we are scheduling an appt early next week. |
| 08/10/2023 4:09:01 PM Hauger to Bruce | One thing I was thinking, was staggering 3 different Real program investments over 3 months…. |
| 08/17/2023 2:29:42 PM | I'm going to watch the market since it dropped this |

| Hauger to Bruce | week and ask him to cash out traditional if there is a good + run to get back to where it was. I want to do real program on that portion next month so time for that. |
| 09/26/2023 3:11:18 PM Hauger to Bruce | Looks like a got my money out of market just in time. Big losses last week and Dow down 400 pts today. WHEW! #grateful. Thanks. |

The text messages also show that Plaintiff initially did not assign blame to Defendants when the Drive Planning scheme collapsed.

| 06/25/2024 2:09:15 PM Bruce to Hauger | I just resent it. Pls read. |
| 06/25/2024 2:17:49 PM Hauger to Bruce | Fuck! and okay. I'll pray that it works it's course and I won't panic yet. My wife on the other hand.. Oh my. Thanks for making sure I read this. |
| 06/25/2024 2:18:58 PM Bruce to Hauger | I wanted to be transparent. |
| 06/26/2024 2:53:51 PM Hauger to Bruce | And really Im trusting it will be ok…unless that dude that resigned was up to some corrupt shit with everyone's money. Ex.. That ponzi crap. |
| 07/18/2024 11:35:26 AM Hauger to Bruce | …Thx for keeping me in the loop. I could also take a call today for a pep talk. |
| 07/23/2024 3:59:12 PM Hauger to Bruce | Thx for the email. At least they provided some new info. |
| 07/23/2024 4:01:23 PM Hauger to Bruce | And it looks like this agency is here to protect us as as investors vs screw us. |

Now, however, Plaintiff has asserted claims for Violations of Sections 12(a)(1) and 12(a)(2) of the Securities Act of 1933, Negligent Misrepresentation, Breach of Fiduciary Duty, Professional Negligence, Violations of the Georgia Uniform Securities Act, and Unjust Enrichment. None of the counts are based on allegations of intentional wrongdoing. All are alleged under theories of negligence or strict liability.

<u>**ARGUMENT AND AUTHORITY**</u>

**1. Legal Standard**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017)). But "[a] pleading that offers 'labels and conclusions' . . . will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, "[w]here there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts." *Meyn Am., LLC v. Tarheel Distributors, Inc.*, 36 F. Supp. 3d 1395, 1406 (M.D. Ga. 2014) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")).

**2. <u>Counts I and II</u>: Plaintiff Fails to State a Claim Under Section 12(a)(1) or 12(a)(2) of the Securities Act of 1933**

Plaintiff has asserted claims against Defendants under Section 12(a)(2) and 12(a)(1) of the Securities Act of 1933 (Counts I and II, respectively). These claims

fail for multiple reasons.[1]

      a.  <u>The Section 12(a)(2) Claim Fails Because There Was No Prospectus</u>

Section 12(a)(2) imposes liability only where a security is sold "by means of a prospectus or oral communication" that contains a material misstatement or omission. 15 U.S.C. § 77l(a)(2). In *Gustafson v. Alloyd Co.*, 513 U.S. 561, 584 (1995), the Supreme Court made clear that "prospectus" is a term of art, referring to a formal document describing a public offering by an issuer or controlling shareholder. The Court further recognized that only oral communications *relating to such a prospectus* are actionable under Section 12(a)(2). *Id.,* at 567-68.

Plaintiff alleges that the REAL notes were sold through a private offering with no prospectus. *See* Compl. ¶ 55 (alleging REAL notes were sold "in a private offering"); ¶¶ 79, 89 ("Neither Plaintiffs nor Defendants had access to the type of information normally provided in a prospectus of a SEC registration statement such as Form S-1."). These concessions are fatal to Plaintiff's 12(a)(2) claim. *See*

---

[1] Plaintiff's Section 12(a)(1) and 12(a)(2) claims also fail because Plaintiff has not alleged that he tendered the REAL notes. Both Section 12(a)(1) and 12(a)(2) provide rescissionary remedies — the right to return the security in exchange for recovery of the purchase price. Particularly under section 12(a)(2), in order to rescind, a plaintiff must allege either tender of the security or an offer to tender it. *See Morin v. Trupin*, 747 F. Supp. 1051, 1063 (S.D.N.Y. 1990); *Sweeney v. Keystone Provident Life Ins. Co.,* 578 F. Supp. 31, 33 (D. Mass. 1983). Here, Plaintiff does not allege he tendered the REAL notes or offered to do so. Nor does he allege he no longer owns the REAL notes or is otherwise unable to tender. Without such allegations, Plaintiff cannot obtain rescissionary relief.

*Edward D. Jones & Co., L.P. Securities Litigation*, No. 2:18-CV-00714, 2019 WL 2994486, at \*8 (E.D. Cal. July 9, 2019) (dismissing 12(a)(2) claim where no formal prospectus alleged); *Faye L. Roth Revocable Trust v. UBS PaineWebber, Inc.,* 323 F. Supp. 2d 1279, 1303 (S.D. Fla. 2004) (holding 12(a)(2) applies only to registered offerings); *Kennedy v. Trustmark Nat'l Bank,* No. 3:05CV220-RS, 2006 WL 140707, at \*6 (N.D. Fla. Jan. 17, 2006) ("Courts have interpreted Gustafson to limit Section 12(a)(2) to public offerings only…"); *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005) ("[A] Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction . . ."). Plaintiff's own allegations foreclose any plausible claim under Section 12(a)(2).

      b. <u>Plaintiff's Section 12(a)(1) and 12(a)(2) Claims Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard</u>

Although Plaintiff attempts to disclaim fraud in connection with Counts I and II (Compl. ¶¶ 74, 83), his 12(a)(1) and 12(a)(2) claims are grounded in alleged misstatements and omissions. *See id.* ¶¶ 76; 85 ("Defendants offered, sold, and/or solicited a security, namely the REAL agreements, by and through making untrue and misleading statements of material fact . . ."). Because Plaintiff's theory of liability is based on alleged false representations and misleading omissions made in connection with the offer and sale of securities, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply.

8

      *i.  Securities Claims Based on Misstatements Must Satisfy Rule 9(b) in the Eleventh Circuit*

Claims based on purported misrepresentations or omissions must be pled with particularity. The rule applies where the complaint charges fraud in effect, including claims for securities fraud under 12(a)(1) and 12(a)(2). *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006) ("We conclude that a § 11 or § 12(a)(2) claim must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint."); *see also Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir. 1996).

Other courts have extended the Rule 9(b) particularity requirement to 12(a)(1) claims, especially where the complaint, like the one here, "incorporates by reference into the § 12(a)(1) claim each of the preceding allegations in the complaint, which unambiguously sound in fraud." *Ellison v. Am. Image Motor Co.,* 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999)(applying Rule 9(b) to 12(a)(1) claim and granting dismissal).

Georgia courts have consistently followed this rule. In *Barron v. Lampley,* the court dismissed a Section 12(a)(2) claim because it failed to "identify the specific statements they claim were misleading, who made them, when they were made, and why they were misleading." No. 4:15-CV-0038-HLM, 2016 WL

5334472, at *5 (N.D. Ga. Jan. 25, 2016). These are the minimum requirements for pleading misrepresentation claims in this Circuit.

ii.  *Plaintiff's Allegations Are Deficient per Rule 9(b)*

While the facts section of the Complaint references some statements allegedly made by Bruce, Plaintiff fails to identify which specific misrepresentations or omissions are at issue for its 12(a) claims. Defendants are not required to guess which scattered allegations Plaintiff intends to rely on. Rule 9(b) demands that Plaintiff clearly specify the particular statements or omissions underlying the fraud claim. *Barron*, 2015 WL 12591006, at *13 (dismissing the § 12(a)(2) claim where plaintiffs' "allegations are conclusory and are merely recitations of the elements of a § 12(a)(2) claim. Plaintiffs do not state which statements were misrepresentations, or which statements were contained in a prospectus, or which statements caused Plaintiffs to purchase securities").

Absent such clarity, the claim cannot stand. The Complaint must state "(1) precisely what statements were made...; (2) the time and place of each such statement and the person responsible...; (3) the content... and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). Plaintiff's vague, conclusory allegations do not satisfy these requirements. Counts I and II must be dismissed for failure to plead with particularity.

Even the limited statements attributed directly to Bruce fail to meet Rule 9(b)'s standard. For example, Plaintiff Hauger alleges Bruce told him the investment was backed by $95 million in assets (Compl. ¶ 40), but fails to identify where it occurred, whether it was oral or written, and how it was conveyed. The Complaint is similarly vague regarding Bruce's alleged assurance that "[w]hen they buy more land, they can intake more investments." *Id.* ¶ 42. These allegations fail to identify where, how, or why the statements were materially misleading, as Rule 9(b) requires, nor do they allege whether any of these statements form part of the 12(a)(1) or 12(a)(2) claims. Plaintiff cannot simply toss together a few allegations and hope to pin federal securities claims on Defendants. [2] [3]

### 3.  All Remaining State Claims (Counts III-VII) Should Be Dismissed If the Federal Claims Are Dismissed

Plaintiff invokes the Court's subject matter jurisdiction based solely on federal question jurisdiction and supplemental jurisdiction for state law claims. Compl. ¶ 7. Plaintiff's federal claims are asserted in Counts I and II, pursuant to Sections 12(a)(2) and 12(a)(1) of the Securities Act of 1933.

---

[2] Plaintiff's breach of fiduciary duty claim is based on Defendants' purported negligent misrepresentations and omissions. It fails to satisfy the Rule 9(b) pleading standard for the reasons discussed in Section 2(b), *supra.*

[3] To the extent Plaintiff's GUSA claim is based on Defendants' purported negligent misrepresentations and omissions, it fails to satisfy the Rule 9(b) pleading standard for the reasons discussed in Section 2(b), *supra.*

For the reasons discussed above, Plaintiff's federal claims should be dismissed. *See* Section 2. Without any federal claims, the Court should also decline to exercise its discretionary supplemental jurisdiction over all remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that district court "may decline to exercise supplemental jurisdiction" over state law claims if the court has dismissed "all claims over which it has original jurisdiction").

The Eleventh Circuit has "encouraged district courts to dismiss any remaining state law claims when. . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984)). Thus, the Court should decline to exercise its supplemental jurisdiction over any remaining state law claims and dismiss them without prejudice.

### 4. <u>Count III</u>: Plaintiff Fails to State a Negligent Misrepresentation Claim

Plaintiff's negligent misrepresentation claim fails to satisfy the Rule 9(b) pleading standard for the reasons discussed in Section 2(b), *supra; see also Intellicig USA LLC v. CN Creative Ltd.*, 2016 WL 5402242, at *10 (N.D. Ga. July 13, 2016) ("[I]n order to state a claim for fraudulent inducement or negligent misrepresentation, a plaintiff must allege a plausibly false representation… Plaintiff's inartful Complaint fails to state with particularity facts sufficient to set forth such claims. The obvious purpose of the particularity requirement of Rule

9(b) is to prevent defendants, and the court, from having to guess the basis of a fraud claim. It is not the Court's duty to piece together allegations and construct a claim it suspects a plaintiff might have intended to bring.").

    5. <u>Count IV</u>: Plaintiff Fails to State a Claim for Breach of Fiduciary Duty

In Georgia, "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler*, 260 Ga. App. 443, 445 (2003) (citations omitted). "[T]he mere fact that one reposes trust and confidence in another does not create a [fiduciary] relationship." *Harris v. Fulton-DeKalb Hosp. Auth.*, 255 F. Supp. 2d 1347, 1375 (N.D. Ga. 2002) (quoting *Lewis v. Alderman*, 162 S.E.2d 440, 441 (Ga. Ct. App. 1968)). The existence of a fiduciary duty "is determined by the substantive agreement of the parties[,] not ... by labels placed on the relationship." *SFM Holdings v. Banc of America Securities*, 600 F.3d 1334, 1339 (11th Cir. 2010).

Federal law distinguishes between the duties owed by professionals based on their roles and responsibilities. ***Investment advisers***, who "typically provide ongoing, regular advice and services in the context of broad investment portfolio management, and are compensated based on the value of assets under management or other fee-based arrangements," owe their clients a fiduciary duty. *Sec. & Exch. Comm'n v. Langemeier*, No. 3:22-CV-00269-ART-CSD, 2025 WL 690432 at *13

(D. Nev. Mar. 4, 2025). On the other hand, **brokers**, who "provide transaction-specific recommendations and receive compensation on a transaction-by-transaction basis," do not. *Id.*

Both federal and Georgia law also draw distinctions between discretionary accounts (where brokers may carry out transactions without the client's prior authorization) and non-discretionary accounts (where brokers may only carry out transactions with prior authorization), holding that financial professionals have "limited fiduciary duties towards a customer who holds a non-discretionary account." *Holmes v. Grubman*, 286 Ga. 636, 643 (2010) (citing *Glisson v. Freeman*, 243 Ga. App. 92, 99 (2000)).

Plaintiff pays little attention to these distinctions. He initially asserts that "Defendants held themselves out as financial advisors." Compl. ¶ 104. But later, he refers to Defendants as "de facto financial advisors, de facto broker-dealers, de facto brokers aka financial advisors, aka registered representatives, aka financial consultants, aka investment advisors, and/or de facto private placement agents." *Id*. ¶ 106. Despite offering nine potential titles, Plaintiff does not plausibly allege facts supporting a finding that Defendants owed him a fiduciary duty.

The Complaint does not allege that Defendants "exercised discretion over Plaintiffs' accounts." *Curry v. TD Ameritrade, Inc*., No. 1:14-CV-1361-LMM, 2015 WL 11251449 at *12 (N.D. Ga. June 30, 2015). To the contrary, Plaintiff's

communications with Bruce suggest that *Plaintiff* had sole discretion over his accounts. *See* Ex. J at 3 (Bruce asks if "Just checking to see if you [Plaintiff] or Sonia have come to any decisions yet" regarding the Drive Planning investment). Moreover, the nature of Defendants' function as described in the Complaint was more akin to a broker-dealer as contemplated by federal law where Defendants "provide[d] transaction-specific recommendations." *Langemeier*, 2025 WL 690432, at *13. Thus, Plaintiff has alleged no facts to show that Defendants owed Plaintiff a fiduciary duty.

### 6. <u>Count V</u>: Plaintiff Fails to State a Claim for Professional Negligence[4]

Under Georgia law, to state a claim for professional negligence, a plaintiff must show: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Dow Chem. Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga. App. 27, 514 S.E.2d 836, 838 (1999) (citations omitted).

As with his breach of fiduciary duty claim, Plaintiff fails to allege facts that

---

[4] Plaintiff alleges Count V "[a]gainst Bruce," but later asserts the claim against "Defendants." Compl. ¶¶110-115. Out of an abundance of caution, Defendants address this claim as to both Defendants.

specify Defendants' role and, by extension, the legal duty attached to that role. Instead, Plaintiff assigns duties based on whichever role is most conducive to the claim. For example, Plaintiff alleges for the first time in this count that Defendants were not only investment advisors and broker-dealers, but also "private placement agents." Compl. ¶ 111. Again, Plaintiff fails to support this claim with adequate facts, and instead summarily states that "Defendants owed Plaintiffs all such duties" that are "used by reasonably careful investment advisors, broker-dealers, and private placement agents." *Id*. ¶¶ 111-112. Plaintiff has failed to state a claim that Defendants deviated from the standard of care for those roles.

### 7.  <u>Count VII: Plaintiff Fails to State a Claim for Unjust Enrichment</u>

To prevail on an unjust enrichment claim in Georgia, a plaintiff must prove: (1) the plaintiff conferred a benefit onto the defendant, (2) defendant had knowledge of the benefit; (3) defendant accepted or retained the benefit; and (4) it would be inequitable for defendant to retain the benefit without paying for it. *Helpling v. Rheem Mfg. Co.*, No. 1:15-CV-2247-WSD, 2016 WL 1222264, at *17 (N.D. Ga. Mar. 23, 2016). This claim fails for two reasons.

#### a.  <u>The Existence of the REAL Agreements Bars the Unjust Enrichment Claim</u>

A claim for "unjust enrichment is available only when there is no legal contract." *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) (citing *Camp Creek Hospitality Inns, Inc. v.*

16

*Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998)). An unjust

enrichment claim fails where "neither side disputes the existence of a valid

contract." *Id.*; *See also Pickelsimer v. Traditional Builders, Inc.*, 183 Ga. App. 709,

710 (1987) (declining to overturn trial court's grant of summary judgment for

defendants on unjust enrichment claim after noting plaintiff "relied on the valid

express written contracts he had entered into with [defendants]").Plaintiff alleges

he entered into eight REAL agreements with Drive Planning. *See* Compl. ¶¶ 42-49;

Exs. B-H. The existence of such contracts precludes his unjust enrichment claim.

### b. Plaintiff Has an Adequate Remedy at Law

Unjust enrichment is an equitable remedy available "only where there is no

available adequate and complete remedy at law." *McGlashan v. Snowden*, 292 Ga.

450, 451 (2013) ("Since [plaintiff] could recover money damages from the builders

in this action, it would be inappropriate for the trial court to grant him equitable

relief."); *see also Cash v. LG Elecs., Inc.*, 342 Ga. App. 735, 742 (2017)

(dismissing unjust enrichment claim where plaintiffs also pled legal claims); *Berg

v. Nat'l Asset Mgmt. Agency*, 2012 WL 13018419, at *12 (N.D. Ga. July 6, 2012)

(dismissing unjust enrichment claim where "[t]he complaint does not sufficiently

dispel the conclusion that an adequate remedy at law ... exists"). Here, Plaintiff can

be made whole through monetary damages and has an adequate remedy at law.

Count VII should be dismissed.

### 8. <u>Class Allegations</u>: Plaintiff Fails to State Viable Class Allegations

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979)). As a result, lawsuits must meet the specific requirements of Fed. R. Civ. P. 23 to be certified as class actions. Class allegations may be dismissed at the pleading stage if "a defendant demonstrates from the face of the complaint that it will be impossible to certify the class[] alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." *Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *2 (N.D. Ga. Mar. 3, 2023). Here, as in *Carrier*, "fatal defects in the class allegations are plain on the face of the complaint." *Id.,* at *2 n.1.

### a. <u>Plaintiff Fails to Plausibly Allege the Rule 23(a) Requirement of Commonality</u>

Fed. R. Civ. P. 23(a)(2) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . there are questions of law or fact common to the class . . ." The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Here, Plaintiff alleges the following are common legal and factual questions:

(A) whether Defendants violated § 12(a)(2) of the Securities Act;

(B) whether Defendants violated § 12(a)(1) of the Securities Act;

(B) whether Defendants committed negligent misrepresentation;

(C) whether Defendants committed common law fraud;

(D) whether Defendants violated the Georgia Securities Act;

(E) whether Defendants breached their fiduciary duty to Plaintiff and the Class;

(F) whether Defendants committed professional negligence; and

(G) whether Plaintiff and Class members are entitled to a claim for unjust enrichment or other equitable relief.

Compl. ¶ 68.

"In essence, Plaintiff's proposed common questions of law and/or facts are a mere recitation of the causes of action alleged in the Complaint . . ." *Ritchie v. Mueller Servs., Inc.*, No. 12-80976-CIV, 2013 WL 12095563, at *6 (S.D. Fla. Apr. 18, 2013). "However, as stated clearly by the *Wal-Mart* Court, the fact that class members suffered violations of the same provisions of law does not satisfy the commonality requirement." *See id.* (citing *Wal-Mart,* 131 S. Ct. at 2251).

A closer look at Plaintiff's causes of action shows that they will require extensive individualized determinations that are not appropriate for class treatment. Plaintiff's federal and state securities claims (Counts I, II, and VI), negligent

misrepresentations claim (Count III), and breach of fiduciary duty claim (Count IV) are all based on allegations of fraud. *See* Compl. ¶ 76 ("Defendants offered, sold, and/or solicited a security, namely the REAL agreements, by and through making untrue and/or misleading statements of material fact . . ."); ¶ 85 (same); ¶ 94 ("Defendants negligently and carelessly made material misrepresentations and omissions . . ."); ¶ 107 (alleging breach of fiduciary duty through negligent misrepresentations and omissions); ¶ 124 ("Defendant is liable to the purchaser if the Defendant sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made . . .").

Plaintiff does not allege that these purported misrepresentations and omissions were made to the putative class in a uniform manner, such as through public statements, a registration statement, or correspondence to the entire class. To the contrary, the Complaint shows that Bruce communicated with her clients privately and individually. *See* Compl. Ex. J (text messages between Bruce and Hauger). What Bruce said (or did not say) in private communications with each of her clients is a highly individualized inquiry that does not meet the commonality requirement of Rule 23(a). *See Bohannon v. Allstate Ins. Co.,* 118 F.R.D. 151, 158 (S.D. Ga. 1986) (finding commonality was not satisfied for fraud claims because "oral misrepresentations would vary for each member of the class").

The Complaint also alleges that Plaintiffs relied on the purported

misrepresentations and omissions to their detriment. Compl. ¶¶ 98; 100-101.

Because the alleged common issues of negligent misrepresentation and common

law fraud will require "require individual proof of reliance on the allegedly

fraudulent representations and practices, the need for such individualized proof

also undermines a finding of commonality." *Amarelis v. Notter Sch. of Culinary*

*Arts, LLC*, No. 6:13-CV-54-ORL-31KRS, 2013 WL 5798573, at *5 (M.D. Fla.

Oct. 28, 2013). *See also Heffner v. Blue Cross and Blue Shield of Ala., Inc.,* 443

F.3d 1330, 1344 (11th Cir. 2006) ("[T]he reliance element of a class claim presents

problems of individualized proof that precludes class certification."); *In re*

*Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 667–68 (N.D. Ga. 2009) ("Regarding the

reliance prong, plaintiffs who proceed under a traditional fraud theory must usually

prove actual, individualized reliance on the material misstatement or omission,

which precludes resolution of the claim through a class action.").

Because Plaintiff fails to plausibly allege questions of law or fact common to

the class, the class allegations should be dismissed.

b.  Plaintiff Fails to Plausibly Allege a Rule 23(b)(3) Class

In addition to Rule 23(a), a party seeking class certification must also satisfy

one of three requirements of Rule 23(b). Here, Plaintiff appears to be travelling

under Rule 23(b)(3). *See* Compl. ¶¶ 71-72. This provision states that a class action

may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### i. *Common Questions of Law and Fact Do Not Predominate*

Plaintiff alleges that "[t]he questions of law or fact common to the claim of each member of the Class predominate over any question or law or fact affecting only individual members of the Class." Compl. ¶ 71. This conclusory allegation is both vague and insufficient.

In *Brown v. Electrolux Home Products, Inc.*, the Eleventh Circuit provided a three-step approach for evaluating the "predominance" factor. The court must (1) identify the parties' claims, defenses, and their elements, (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial, and (3) determine whether the common questions predominate. 817 F.3d 1225, 1234 (11th Cir. 2016). "Where, after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th

Cir. 2004).

This Court has previously found that fraud-based claims are inappropriate for class certification because individual issues predominate over class issues. *See Begley v. Acad. Life Ins. Co.*, 200 F.R.D. 489, 498 (N.D. Ga. 2001) (declining to certify issues related to negligent misrepresentation claims because "individual issues of whether a material fact was misrepresented to a particular class member and whether such class member detrimentally relied thereupon predominates over any common issues"); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 693 (N.D. Ga. 2003) ("Courts ordinarily have refused to certify class actions where the actions involve fraud claims that will require individual proof of reliance."); *Id.* ("Any oral misrepresentations, by their very nature, would differ from putative class member to putative class member, and would require individual proof. Additionally, the written misrepresentations . . . very likely also differed from putative class member to putative class member. Under these circumstances, common issues do not predominate over individual issues.").

Unjust enrichment claims also lack predominance. *See Vega,* 564 F.3d at 1274 (finding unjust enrichment claim "lacks commonality and predominance" because "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts").

Additionally, Plaintiff's claims do not satisfy the predominance factor

because the class members' damages will require individual proof. "The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (quoting William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.)). But this "black-letter rule has always been subject to exceptions." *Id.,* at 1240. As here, "individual damages defeat predominance when they are accompanied by significant individualized questions going to liability." *Id.* (citation omitted).

Plaintiff's class allegations should be dismissed because he has not plausibly alleged that common questions predominate over individual questions.

### ii.  A Class Action Is Not Superior

The class allegations should be dismissed because Plaintiff has failed to allege facts supporting his conclusory assertion that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The Eleventh Circuit has recognized that when "individual plaintiffs may be entitled to substantial compensatory and punitive damage recoveries should they prevail, the most compelling justification for a Rule 23(b)(3) class action-the possibility of negative value suits is absent . . ." *Rutstein v. Avis Rent-A-Car Systems, Inc*., 211 F.3d 1228, 1241 n.21 (11th Cir. 2000). This is consistent with the rulings of other courts around the country, which have found that a class action

is not superior where plaintiffs allege significant damages. *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 632 (6th Cir. 2011) (finding class action not superior where class representative "alone claimed damages in excess of $280,000, and the record indicates that the possible awards of other class members exceed this amount"); *Plastic Surgery Associates, S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 77 (D. Mass. 2019) (finding class action not superior "where the alleged injury for each plaintiff exceeds $150,000"); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003) (denying class certification in part because each class member's alleged damages exceeded $75,000; "[t]hus, this is not a case where the potential recovery for each plaintiff is *de minimis* and a class action is necessary for any class members to recover").

Plaintiff asserts there is "little economic incentive" for individual class members to prosecute separate claims. Compl. ¶ 72(A). This is belied by Plaintiff's own allegations that he lost over $440,000. *See* Compl. ¶¶ 42-49. This is not a "negative value suit" justifying treatment as a class action. Plaintiff's class allegations should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss.

Respectfully submitted this 5th day of May, 2025.

**s/ Jeffrey D. Horst**
Jeffrey D. Horst
Georgia Bar No. 367834
Jessica G. Cino
Georgia Bar No. 577837
Sada Jacobson Baby
Georgia Bar No. 307214
**KREVOLIN & HORST, LLC**
1201 W. Peachtree Street, N.W.
Suite 3500, One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
horst@khlawfirm.com
cino@khlawfirm.com
baby@khlawfirm.com
*Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

<u>**s/ Jeffrey D. Horst**</u>
Jeffrey D. Horst
*Counsel for Defendants*