# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| BRIAN HAUGER, individually | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action Case No. |
| | ) | |
| | ) | 1:25-cv-01058-VMC |
| SDWC FINANCIAL, LLC, a Florida | ) | |
| limited liability corporation, | ) | |
| and MEREDITH BRUCE, | ) | |
| a Georgia individual, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Brian Hauger ("Hauger"), individually and on behalf of all others

similarly situated, submits this Memorandum of Law in Response to Defendants'

Motion to Dismiss Plaintiff's Amended Complaint:

## INTRODUCTION

Defendants' Motion to Dismiss should be denied because Plaintiff's Amended Complaint sets forth well-pleaded, plausible claims (and exhibits in support) that, when accepted as true—as required at this stage—establish Defendants' strict liability under the Securities Act of 1933, as well as liability under state-law theories. Critically, <u>this is not a fraud case</u> where scienter and reliance are predominant issues. Plaintiff does not allege fraud, or claims predicated on scienter. Rather, the gravamen of the Amended Complaint is that Defendants are strictly liable under Sections 12(a)(1) and 12(a)(2) of the Securities Act for selling unregistered securities, and that they also committed negligent misrepresentation, breached fiduciary duties (for undisclosed material conflicts of interest), and were unjustly enriched at investors' expense.

Defendants attempt to avoid accountability/liability by asserting, in error, that a heightened pleading standard under Federal Rule of Civil Procedure 9(b) applies. It does not. The claims asserted under Sections 12(a)(1) and 12(a)(2) sound in strict liability or negligence, not fraud. Courts, including the Eleventh Circuit, confirm that claims asserted under Sections 12(a)(1) and 12(a)(2) for strict liability are not subject to Rule 9(b)'s heightened pleading requirements. Nevertheless, even if such standard applied, the Amended Complaint pleads facts with sufficient particularity.

In seeking dismissal, Defendants contend that Plaintiff's Sections 12(a)(1) and 12(a)(2) claims fail because there was no formal document labeled "prospectus". But the statutory definition of a "prospectus" does not require a document entitled "prospectus". Rather, the statutory definition of "prospectus" is met where, as here, securities sold were as part of a public offering, using broadly disseminated promotional materials. That is all that is required – nothing more.

Defendants maintain that Plaintiff is making a recission claim pursuant to Sections 12(a)(1) and 12(a)(2), and that such recission claim fails because Plaintiff did not tender the unregistered securities to Drive Planning. Yet, Plaintiff never pled a claim for recission against Defendants. Plaintiff seeks damages based on Defendants' strict liability for unlawful conduct unlawful conduct selling unregistered, non-exempt securities for which Defendants collected undisclosed commissions and benefits—including exotic vacations—as inducements to perpetuate a fraudulent scheme.

Finally, Defendants' blame Plaintiff for investing in the very securities Defendants' promoted and sold Plaintiff via marketing presentations and uniform materials. Blame the victim for what you marketed and sold him? This is clearly specious. The Amended Complaint clearly sets out Defendants' pivotal promoter/sales/financial advisor and consultant roles in the direct promotion and sale of the unregistered securities in issue -- to Plaintiff and the putative class and

that Defendants failed to disclose material facts that any reasonable investor would expect to know. Undisclosed material facts include Defendants' concealed conflict of interest—namely, that they were paid by the Ponzi scheme operators 4% commissions *issued quarterly, even on reinvested funds rolled over into subsequent quarters*. These undisclosed payments totaled over $1.9 million and constituted a clear conflict of interest. This failure to disclose violated multiple duties and caused direct harm to Plaintiff and similarly situated individuals.

For the above reasons, as further detailed below, Defendants' motion must be denied in full.

A class action is the most efficient vehicle for establishing Defendants' strict liability and common law liability, and Defendants should not be allowed to evade accountability and avoid the most efficient forum and process for resolving such claims.

## LEGAL STANDARD

In ruling on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept the factual allegations in the Amended Complaint as true and construe them in the light most favorable to the plaintiff." *Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1210 (11th Cir. 2020), *citing Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). To survive a motion to dismiss, an Amended Complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## **ARGUMENTS**

### A. Counts I and II of Plaintiff's Amended Complaint state proper claims under Sections 12(a)(1) and 12(a)(2) of the Securities Act of 1933.

Defendants assert that: (1) Plaintiff was required to plead "tender" or an offer to tender; (2) the Section 12(a)(2) claim fails because there was no prospectus; and (3) both claims fail pursuant to the heightened pleading standards of Rule 9(b). These arguments lack merit.

### 1. **Defendants invent a pleading requirement of "tender" that simply does not exist.**

Defendants begin with a curious assertion that Plaintiff's claims under Sections 12(a)(1) and 12(a)(2) "fail" because Plaintiff has not alleged that he tendered the REAL notes. Def. Mem. at 7, FN 1. Defendants go on to suggest that because Sections 12(a)(1) and 12(a)(2) provide recessionary remedies, a Plaintiff must allege tender, or an offer to tender the securities back, in order to avail himself of the right to rescind. *Id.*   Plaintiff makes it clear in his Amended Complaint that there is nothing worth tendering because the REAL notes are

4

worthless (making tender futile).  Further, the pleading requirements pursuant to

Sections 12(a)(1) and 12(a)(2) are straightforward and do not include a "tender"

requirement:

> It shall be unlawful for any person, *directly or indirectly* to make use
> of *any* means or instruments of transportation or communication in
> interstate commerce ... to offer to sell or offer to buy through the use or
> medium of *any prospectus* or *otherwise* any security, unless a registration
> statement has been filed as to such security.

15 U.S.C. § 77e(c).  There is no statutory requirement that a plaintiff tender, or

offer to tender, unregistered securities in order to state a valid claim.  There is

likewise no requirement that Plaintiff engage in a futile act—particularly where, as

here, the securities in question were merely a worthless façade for a Ponzi scheme.

An attempt to insert a statutory requirement where none exists is not

cognizable.  See *Wildes v. Bitconnect International*, 25 F.4th 1341, 1345-1346 (11th

Cir. 2022) (rejecting Defendants' attempt to insert into the statutory language a

requirement that the investments at issue be offered directly, as opposed to through

mass media, noting that the statutory text is clear).  Defendants improper attempt to

insert a statutory requirement, a "tender" requirement, should be rejected.

## 2.  Contrary to Defendants' assertion, there was a prospectus within the meaning of Section 12(a)(2).

Defendants acknowledge section 12(a)(2) imposes liability upon a seller of a

security by means of either a prospectus or oral communication that includes an

untrue statement of material fact or omits a material fact. 15 U.S.C. § 77l(a)(2).

Defendants maintain that *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995) stands for the proposition that "prospectus" is a term of art that refers to a formally labeled "prospectus" document describing a public offering and that only oral communications relating to such a formal document are actionable under Section 12(a)(2). Def. Mem. at 7; *citing Gustafson,* 513 U.S. at 567-68. <u>Yet this is not the statutory definition of "Prospectus".</u>

"Prospectus" is defined in the Securities Act as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." 15 U.S.C. § 77b(a)(10). Defendants reliance upon *Gustafson* to suggest that the offerings at issue herein do not fit the Securities Act's definition of a "prospectus," is meritless. The statutory definition of "prospectus" is clear on its face, and *Gustafson* does not purport to change the plain statutory language.  The term "prospectus" refers to a document soliciting the public to acquire securities. *Gustafson,* 513 U.S. at 569. ""[T]he term ''prospectus'' means any prospectus, notice, circular, advertisement, letter, <u>or communication</u>, written or by radio or television, which offers any security for sale or confirms the sale of any security.'" Gustafson, 513 U.S. at 573–74 (quoting 15 U.S.C. § 77b(10)) (emphasis added).

Plaintiffs allege the existence of a prospectus within the meaning of the Securities Act by describing a detailed presentation that included a chart indicating

projected returns from proposed REAL investments with Drive Planning. Am. Compl. ¶32.  Plaintiff alleged that Defendants offered the REAL investments for sale nationwide and accepted investments from international investors. Am. Compl. ¶ 34.  Defendants misquote the Amended Complaint, claiming that Plaintiff alleged "the REAL notes were sold through a private offering with no prospectus." Def. Mem. at 7 (citing Am. Compl. ¶ 55).  To the contrary, ¶55 of Plaintiff's Amended Complaint actually states: "The REAL agreements, aka promissory notes, were sold in a private offering, which did not qualify as an exempt offering under SEC regulations." Am. Compl. ¶ 55.  Defendant's assertion that Plaintiff alleged there was no prospectus is false.

In contrast to *Gustafson*, the securities at issue here were offered and sold in connection with a "prospectus"—that is, written promotional materials broadly disseminated to the public.  Unlike *Gustafson*, these securities here were not limited to a closed, pre-identified group of investors.  They were promoted and sold to the public.  Plaintiffs alleged that the investments at issue were marketed and sold through public-facing brochures—functionally serving as a prospectus. *See* Am. Compl. ¶¶ 34, 107.  Well over 40 investors ultimately purchased the REAL investments, and the presentation of the offering itself was undeniably public facing. *See* Am. Compl. ¶ 67.

Defendants entirely ignore the well-pleaded allegations in the Amended

Complaint that describe, with particularity, the public nature of the offering. Defendants literally marketed the REAL investments nationwide, and even accepted funds from international investors. *See* Am. Compl. ¶ 34.

Under the Securities Act and the Supreme Court's holding in *Gustafson*, a document need not be labeled a "prospectus" to qualify as one. What matters is whether the communication solicits the public in connection with the sale of securities. *See* Am. Compl. ¶ 9. The brochures and presentations prepared and disseminated by Defendants meet that definition and thus constitute a "prospectus" within the meaning of the plain language of the Act. Defendants' attempt to recast the offering as exempt fails. Accordingly, the motion to dismiss should be denied.

3. **Even assuming *arguendo* the heightened pleading standards of Rule 9(b) apply herein (they do not), Counts I and II satisfy those requirements.**

Defendants' repeated assertions regarding heightened pleading requirements (*See* Def. Mem. at 8–11) are without merit. Plaintiffs have not brought any claims under Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), where such heightened standards apply. Rather, Plaintiffs assert strict liability claims under Sections 12(a)(1) and 12(a)(2) of the **Securities Act of 1933** ("Securities Act"), to which the heightened pleading requirements do not apply. Defendants' support for the heightened pleading standard being applicable are all cases in

which fraud pursuant to Rule 10b-5 was alleged. (*See* Def. Mem. at 8-11).[1]

Claims made pursuant to Section 10b-5 of the Exchange Act have a scienter requirement.  Here, Plaintiff's claims are based solely upon strict liability or negligence, which have no scienter element.  Plaintiff explicitly alleged that there was NO claim of fraud or intentional recklessness in the Amended Complaint. *See* Am. Compl. ¶¶74 and 83.  The heightened pleading requirements for fraud pursuant to FRCP 9(b) simply do not apply.

Defendants cite *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006) for the conclusory proposition that "We conclude that a § 11 or § 12(a)(2) claim must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as

---

[1] *Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273, 1277 (11th Cir. 2006)("Rule 9(b) applies when the misrepresentation justifying relief under the Securities Act is also alleged to support a claim for fraud under the Exchange Act and Rule 10b-5"); *Melder v. Morris*, 27 F.3d 1097, 1099 (5th Cir. 1994)("The plaintiffs alleged violations of §§ 11, 12(2), and 15 of the Securities Act of 1933, § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5"); *In re Stac Elecs. Sec. Litig*., 89 F.3d 1399 (9th Cir. 1996)(only 10b-alleged); *Ellison v. Am. Image Motor Co*., 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999)(dismissal for failure to meet heightened pleading standard where the same conduct was basis for 12(a) claims and 10b-5 claims); *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001)(Case not alleging any 12(a) claims but making clear that "Plaintiffs' claims of fraud under § 10(b) and Rule 10b-5 also must satisfy the requirements of Fed.R.Civ.P. 9(b)."); *Barron v. Lampley*, 2015 U.S. Dist. LEXIS 199793 at *38 ("When the underlying misrepresentation for a § 12(a)(2) claim is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b), the Court applies Federal Rule of Civil Procedure 9(b)").

alleged elsewhere in the complaint." However, Defendants present this quote <u>out of context.</u> Defendants conveniently leave out the *Wagner* Court's recognition that "<u>It is clear that neither allegations of fraud nor scienter are necessarily part of either of these claims.</u>" *Wagner*, 464 F.3d at 1278 (citing 15 U.S.C. § 77l(a)(2)) (emphasis added).

The problem, in *Wagner* and with many amended complaints courts deem subject to enhanced 9(b) particularity requirements, was that the plaintiff had submitted a "shotgun pleading." *Id.* at 1279. In a shotgun pleading, every antecedent allegation is incorporated by reference into each subsequent claim for relief or affirmative defense. *Id.*

Even assuming arguendo that 9(b) standard applies here, which it does not, the "shotgun pleading" problem does not exist here. In contrast to *Wagner* and other similar cases, the Amended Complaint here does not incorporate by reference every single preceding allegation into each count. Rather, though the general allegations about the scheme are incorporated into and relevant to each count, Plaintiff added, for each individual count, factual allegations that are specific to that count alone. *See* Am. Compl. at 18-19; 19-20; 21; 22-24; 24; 25-27; 27-28. As such, the problems inherent in a proverbial shotgun pleading do not exist here. Plaintiff has made it abundantly clear which allegations (sometimes repeated for a separate count to ensure clarity) connect to which cause of action.

Nowhere in the facts alleged to support the 12(a)(1) or 12(a)(2) claims (Counts I and II) does Plaintiff suggest that Defendants made their misrepresentations or omitted material facts with scienter.  Scienter is neither relevant nor necessary to the causes of action alleged in Counts I and II, and it is the Defendants who seek to impose 9(b) pleading requirements for scienter related claims that don't exist here.  Plaintiff drafted the Amended Complaint with care and avoided exactly the issues associated with shotgun pleadings.

Even assuming, arguendo, that the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to Counts I and II, Plaintiff's Amended Complaint more than satisfies those requirements with respect to the allegations of false or misleading statements.

The Supreme Court has held that, to adequately plead false or misleading statements, Plaintiffs must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."; *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007) citing 15 U.S.C. § 78u-4(b)(2).  Putting aside the issue of "state of mind," the Supreme Court has held that courts determine whether there is a strong inference based upon all of the facts, considered collectively. *Id.* at 325-326. As such, courts must take into

11

account plausible opposing inferences, an examination that is inherently

comparative. *Id.* at 323. The inference drawn from the facts as to the elements of

the claim must be cogent and compelling – not merely reasonable or permissible.

*Id.* at 324. Defendants' suggestion notwithstanding, Plaintiffs have indeed pled,

quite cogently, the facts -- i.e. the "who, what, when, where, and how" -- regarding

Defendants' misleading statements and omissions.  Plaintiff identified numerous

false statements and omissions attributable to Defendants, and specified the

manner in which those false statements and omissions were made, when they were

made, by whom, and to whom.  There is no basis for Defendant's suggestion that

Plaintiff's allegations are not sufficiently particular.

　　If the Court determines that Plaintiff has not satisfied pleading requirements

as to Counts I and II, even though there are no allegations of fraud, Plaintiff will

amend the Amended Complaint *sua sponte* to comply.[2]

**B. Defendants offer no basis for dismissing Plaintiff's claim for negligent misrepresentation in Count III.**

　　Defendants' argue that Count III (negligent misrepresentation) fails to meet

the heightened pleading standard of Rule 9(b).  However, as this Court recently

_____

[2] Defendants attempt to cut the analysis short before reaching the state law claims alleged in Counts III through VII in hopes that they will be thrown out as long as the federal claims alleged in Counts I and Count II are dismissed. For the reasons already discussed, there is no basis for dismissing those claims, and no need to reach the issue of whether the court should exercise its discretion to exercise supplemental jurisdiction over the state law claims.

held, the pleading requirements of Rule 9(b) do not apply to a claim of negligent misrepresentation. *Maverick Fund, Ltd. v. Mohawk Indus., Inc.*, No. 4:21-CV-00118-VMC, 2023 WL 2887603, at *1 (N.D. Ga. Mar. 31, 2023) ("'the heightened pleading standards of Rule 9(b) do not apply to claims of negligent misrepresentation.'" (Citing *Shea v. Best Buy Homes*, LLC, 533 F. Supp. 3d 1321, 1339 (N.D. Ga. 2021)). Indeed, this Court expressly held that Plaintiff need only satisfy the pleading standard under Rule 8(a). *Maverick*, 2023 WL 2887603, at *13 ("The Court finds that under the Rule 8(a) pleading standard, Plaintiffs have sufficiently alleged a claim for negligent misrepresentation under Georgia law....").

Like Counts I and II, Count III is not a claim for fraud, but nevertheless is based on detailed allegations of misrepresentations and omissions sufficient to survive a motion to dismiss.

To state a claim for negligent misrepresentation, a plaintiff must allege: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.,* 267 Ga. 424, 479 S.E.2d 727, 729 (1997). Plaintiff alleges sufficient facts to support all the requisite elements. *See* Am. Compl. ¶¶ 106-109. Plaintiff clearly identified, within Count III, the specific factual allegations supporting the negligent misrepresentation

claim. *See* Am. Compl. ¶¶ 93–102. As such, the Amended Complaint meets the

applicable Rule 8(a) standard providing Defendants with fair notice of this claim.

### C.    Defendants' contention that Plaintiff's claim for Breach of Fiduciary duty in Count IV should be dismissed lacks merit.

Defendants note a claim for breach of fiduciary duty requires three

elements—(1) the existence of a fiduciary duty, (2) breach of that duty, and (3)

resulting damages.  *See* Def. Mem. at 13.  Defendants concede that a fiduciary duty

does not arise merely from labels or titles. *Id.* (citing *SFM Holdings, Ltd. v. Banc

of America Securities, LLC*, 600 F.3d 1334, 1341 (11th Cir. 2010)).

However, Defendants' reliance on *SFM Holdings* is for the proposition that

the existence of a fiduciary duty depends on "the substantive agreement of the

parties," is inapposite, because *SFM* is distinguishable from the present case

because *SFM* involved a contractual relationship—which is not alleged or present

here.  In the absence of a contract, *SFM* makes clear, whether a fiduciary duty

exists turns on "the facts and circumstances of the parties' relationship." *SFM

Holdings, Ltd.,* 600 F.3d at 1341.  Accordingly, focusing on the facts and

circumstances of the parties' relationship, Plaintiff's allegations regarding

Defendants' financial advisory role, and influence over, Plaintiff's investment

decisions are more than sufficient to support the existence of a fiduciary duty at

this stage.

While Defendants correctly note that a fiduciary duty cannot be established by

labels alone, they nevertheless rely on job titles—such as "investment adviser," "financial advisor," or "broker"—to argue that no fiduciary duty was alleged. This misses the point (as the case they cited notes). Regardless of the titles used, Plaintiff has alleged a factual relationship between Defendants and both Plaintiff and the putative class that gives rise to a fiduciary duty. *See* Am. Compl. ¶¶ 37-41, 105-108. Moreover, Defendants use SEC and Financial Industry Regulatory Authority (FINRA), for the proposition that a fiduciary duty does not exist, but such regulatory authorities support the opposite conclusion. FINRA and the SEC which exist to protect investors like Plaintiff, requires that financial professionals—regardless of title—adhere to just and equitable principles of trade. *See* FINRA Rule 2110.

Further, all financial advisors (brokers and investment advisors alike) owe Regulation Best Interest ("Reg BI") duties to their clients. While Reg BI does not itself establish a fiduciary duty, it codifies core fiduciary principles—particularly the duties of loyalty and care—that apply when making recommendations to retail clients. *See* 17 C.F.R. § 240.15l-1.[3] Here, Defendants held themselves out as

---

[3] *See* 17 CFR § 240.15l-1 – (a)(1) A broker, dealer, or associated person of a broker or dealer, when recommending any securities transaction or investment strategy involving securities to a retail customer, must act in the retail customer's best interest at the time of the recommendation—without placing the interests of the broker, dealer, or associated person ahead of the customer. (a)(2)**(i) Disclosure obligation.** Prior to or at the time of recommendation, provides the retail customer

trusted financial advisors with Plaintiff and the putative class. Defendants' failure

to disclose repeated, exorbitant commissions—including quarterly payments

exceeding 4%—and the existence of exotic, fraudster-funded incentives directly

contravenes the duty of loyalty they owed to their clients. That conduct not only

violates the conflict-of-interest obligations imposed by Reg BI, but also constitutes

a textbook breach of fiduciary duty under common law principles governing

relationships of trust and reliance.

In Georgia, a fiduciary relationship is defined as one where the law requires,

based upon a relationship of mutual confidence where, the "utmost good faith."

O.C.G.A. § 23-2-58 (2024); *See Cushing v. Cohen,* 323 Ga. App. 497, 746 S.E.2d

898, 907-908 (2013). Not only did Plaintiff allege sufficient facts to support the

existence and breach of a fiduciary duty within the common allegations, but

Plaintiff also identified, with particularity, those facts within Count V. *See* Am.

Compl. ¶¶ 96-102. Indeed, Plaintiff lists, in great detail, the numerous ways in

which Defendants owed Plaintiff a fiduciary duty (¶ 99) as well as the numerous

ways in which Defendants breached that duty (¶ 100).

Defendants suggest that their fiduciary duty does not exist because they liken

---

with **full and fair written disclosure** of: … **(4) All material facts concerning
conflicts of interest.** (b) Definitions…. (3) *Conflict of interest* **means an interest
that might incline** a broker, dealer, or a natural person who is an <u>associated</u> person
of a broker or dealer —**consciously or unconsciously—to make a
recommendation that is not disinterested.**

the financial advice given here to that of a broker advising a client with a non-discretionary account.  *See* Def. Mem. at 14.  The Georgia Supreme Court squarely rejected this, holding that a broker owes a client a fiduciary duty, even with a non-discretionary account:

> However, we further conclude that the fiduciary duties owed by a broker to a customer with a non-discretionary account are not restricted to the actual execution of transactions. The broker will generally have a heightened duty, even to the holder of a non-discretionary account, when recommending an investment ... to which the broker has a conflict of interest.

*Holmes v. Grubman*, 286 Ga. 636, 643, 691 S.E.2d 196, 201–02 (2010).

And, here, it is undisputed that Plaintiff and the putative class pled not only a conflict of interest, but an undisclosed conflict of interest, with the Defendants receiving over $1,900,000.00 in undisclosed commissions, on the sale of the unregistered securities to Plaintiff and the putative class.

### D. Defendants offer no meritorious basis for dismissing Plaintiff's claim for Professional Negligence alleged in Count V.[4]

Plaintiff properly pled that Defendant Bruce was professionally negligent. The Amended Complaint details how Defendant Bruce, despite her specialized expertise, failed to investigate the claims she promoted on behalf of Drive

---

[4] Count V in the Amended Complaint, is brought against Defendant Bruce only. Am. Compl. at 24.  Defendants correctly note that Plaintiff mistakenly used the term "Defendants" within the specific allegations in ¶¶ 111-115, and would, with the court's permission, amend that *sua sponte* to change it to "Bruce."

Planning. *See* Am. Compl. ¶¶ 111-114.

### E. Plaintiff's Claim for unjust enrichment in Count VII.[5]

Defendants correctly state, to prevail on an unjust enrichment claim in Georgia, a plaintiff must plead that he conferred a benefit on Defendants, Defendants had knowledge of the benefit, Defendants accepted or retained the benefit, and it would be inequitable for Defendants to retain the benefit without paying for it. Def. Mem. at 16 (*citations omitted*).[6]  Defendants offer two inapposite reasons for seeking dismissal of this claim: (1) the existence of the REAL agreements bars it; and (2) that Plaintiff has an adequate remedy at law. Neither argument withstands scrutiny.

The REAL agreements do not bar Plaintiff's unjust enrichment claim because the promissory notes at issue are between Plaintiff and other parties (the Ponzi Scheme founders – Burkhalter and Drive Planning), <u>not these Defendants</u>. The cases cited by Defendants are distinguishable and inapposite because they all involve situations where the contract at issue was between the same parties to the

---

[5] Defendants do not specifically address their reasons for objecting to Count VI (claim for violations of the Georgia Uniform Securities Act) other than to state the following, in an early footnote: "To the extent Plaintiff's GUSA claim is based on Defendants' purported negligent misrepresentations and omissions, it fails to satisfy the Rule 9(b) pleading standard for the reasons discussed in Section 2(b), *supra*." *See* Def. Mem. at 11, FN 3. Just as this argument was unavailing with regard to Counts I and II, it is unavailing as to Count VI.

[6] Again, Defendants jump ahead of themselves a bit, talking about proof rather than about stating a claim for purposes of a Motion to Dismiss.

dispute. Here, no such contractual relationship exists between Plaintiff and

Defendants, and thus the existence of the REAL agreements does not bar an

equitable claim for unjust enrichment against these Defendants. *See, e.g.,*

*Pickelsimer v. Traditional Builders, Inc.*, 183 Ga. App. 709, 710 (1987).

Defendants' second argument is that the Court must dismiss Plaintiff's

unjust enrichment because there is an adequate remedy at law (monetary damages).

This argument likewise fails because Plaintiff is entitled to plead unjust enrichment

*in the alternative*.

> Ailion attempts to avoid this result by arguing that a cause of action
> for unjust enrichment will lie only in the absence of an express
> contract. See *Ga. Dept. of Community Health v. Data Inquiry*, 313
> Ga.App. 683, 687, 722 S.E.2d 403 (2012) ("[u]njust enrichment is an
> equitable principle that may be applied when there is no valid written
> contract between the parties") (citation omitted). And because
> Campbell's complaint alleges the existence of an enforceable oral
> contract between the parties, Ailion contends that Campbell may not
> pursue recovery based on the equitable theory of unjust enrichment.
> This argument, however, ignores the fact that "Georgia law ... permits
> a plaintiff to proceed to trial on alternative theories of recovery."
> *Wingate Land & Dev. v. Robert C. Walker, Inc.*, 252 Ga.App. 818,
> 821, 558 S.E.2d 13 (2001) (footnote omitted).

*Campbell v. Ailion*, 338 Ga. App. 382, 387–88, 790 S.E.2d 68, 74 (2016). *See*

O.C.G.A. § 9-11-8 (2020) ("Relief in the alternative or of several different types

may be demanded.")

### F. Plaintiff Alleges Sufficient Class Allegations

Plaintiff sets forth each of the requisite class allegations clearly and with

specificity. Am. Compl. ¶¶ 64-72.  Defendants challenge the sufficiency of

Plaintiff's pleading Fed. R. Civ. P. 23 requisites on three grounds: commonality;

predominance; and superiority.

## **Commonality**

Rule 23(a)(2) requires only the presence of "at least one" question "of law or

fact common to the class." for commonality to be satisfied (especially at the

pleading stage).  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir.

2009).

Defendant contends that commonality was not sufficiently pled arguing that

Plaintiff's proposed common questions of law and fact are a mere restatement of

the causes of action alleged in the Amended Complaint.  (Def. Memo pp 18-19).

However, Defendants conveniently overlook that Plaintiff pled both facts and law

throughout that are common to all class members, which makes this action one

ideally suited for resolution on a class-wide basis, namely: (1) Defendants sold

unregistered securities in violation of law to Plaintiff and the putative class (a strict

liability standard and simple issue); (2) Defendants violated Section 12(a)(1) and

12 (2) of the 1934 Securities Act thereby (again a no scienter strict liability

standard); (3) did the Defendants engage in uniform misrepresentations and

omissions through uniform presentations and documents; and (4) did the

Defendants sell these securities to clients while receiving significant undisclosed

commissions (over $1,900,000), as well as undisclosed incentives of extravagant travel in connection with the sale of unregistered securities. *See* Def. Mem. at 19.

Defendants' contention that Defendant Bruce had different private conversations with each of her clients, allegedly creating individual reliance issues that undermine the commonality claim is meritless. *Id.* at 20. On the contrary, Plaintiff alleges that Defendants disseminated uniform promotional materials filled with material misstatements and omissions, and that they promoted these materials to prospective investors (which include the class members) through a variety of means. *See* Am. Compl. ¶¶ 32, 34.

Defendants argue that Court could not certify the proposed class because each Plaintiff must prove individualized reliance on alleged misrepresentations made via telephone, email, or text exchanges. *See* Def. Mem. at 4-5. But Defendants' logic is fatally flawed because proof strict liability for selling unregistered securities does not rely on any specific conversation or reliance, and Defendants ignore that uniform marketing materials were sent to class members by these Defendants.

Further, accepting Defendants' broad contention that reliance overrides claims based on uniform factual and legal allegations (where only 1 uniform factual/legal claim is sufficient to establish commonality) would effectively bar class certification in nearly every case—an outcome that is plainly inconsistent with established standards and the policy behind the efficient use of Court resources

through class actions.  At the pleading stage, Plaintiff has sufficiently demonstrated commonality.

**<u>Predominance</u>**

Defendants suggest that the common questions do not predominate because, "after adjudication of class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." Def. Mem. at 22, *citing Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1270 (11th Cir. 2009). To satisfy the predominance requirement of Rule 23(b), common questions must predominate such that they "ha[ve] a direct impact on every class member's effort to establish liability" that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Vega,* 564 F.3d at 1270.  If common issues truly predominate over individualized issues, the addition or subtraction of more plaintiffs to the class should not have a substantial effect on the substance or quantity of evidence offered. *Id* at 1270. The only conceivable individualized issues that remain after the class allegations are adjudicated herein are individual damage calculations which, as Defendants admit, generally do not defeat a finding of predominance. Def. Mem. at 23-24, *citing Brown v. Electrolux Home Prods., Inc.,* 817 F.3d 1225, 1239 (11th Cir. 2016).

Defendants suggest broadly, and without exception, that fraud-based claims

and unjust enrichment claims lack predominance. Def. Mem. 23. To the contrary,

"[t]he requirement of determination of damages on an individual basis does not

foreclose a finding of predominance or defeat certification of the class." *In re Tri-*

*State Crematory Litigation*, 215 F.R.D. 660, 692 n.20 (N.D. Ga. 2003). It is

difficult to discern from Defendants' memo exactly why they believe there are

significant individualized questions on this issue.  As to the "unjust enrichment

claims" issue, which was properly pled in the alternative, Defendants rely here

solely upon Florida law, which has no precedential value. *See* Def. Mem. at 23.

## **Superiority**

Defendants suggest that Plaintiff has failed to allege facts supporting his

assertion that a class action is superior to other available methods of adjudication.

*Id.* at 24. In support of their contention, Defendants cite to *Rutstein v. Avis Rent-A-*

*Car Systems, Inc.,* 211 F.3d 1228, 1241 FN 21 (11th Cir. 2000), where the court

explained that because individual plaintiffs may be entitled to substantial

compensatory and punitive damages should they prevail, the most compelling

reason for a class action – the possibility of negative value suits – was absent.

Because the issues involved in *Rutstein* were involving a civil rights claim, the

court found there was nothing to be gained by certifying a class action beyond

coercing a settlement. *Id.* Defendants use this to imply that each putative class

member should file separate cases and have all of them transferred to this Court to

be adjudicated separately. This is absurd.

Rutstein is not relevant to this matter because the conduct giving rise to this class action is common to all class members and uniform disposition of their common claims is superior to individual cases litigated before this Court. Additionally, *Rutstein* involved proof of intent to discriminate against each class member on some basis and suffering by each because of that intentional discrimination. These questions, by nature, turn on the resolution of highly case-specific factual issues. *Rutstein,* 211 F.3d at 1235 (*citations omitted*). It is also important to note that *Rutstein* was a decision on a Motion for Class Certification, which took place after discovery was taken by those parties, and not a Motion to Dismiss. By the logic of *Rutstein* Plaintiff should still be allowed to conduct discovery and present a Motion for Class Certification.

Defendants also seized upon the notion that the possibility of a substantial damages recovery by some class members to allege that a class action is *not* superior. In support of this theory, Defendants cited to several cases, none of which is from this jurisdiction, and each of which is distinguishable. Def. Mem. at 24-25. In each of the cases cited, the court found that the alleged injury for *each* Plaintiff was substantial, indicating that each individual had incentive to bring an individual claim. *See, e.g., Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 632 (6th Cir. 2011)("a court ought to consider

superiority from many viewpoints, including that 'of the public at large'" (Quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974))); *Plastic Surgery Associates, S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 77 (D. Mass. 2019) ("The fact that individual class members have sued separately in related cases pending before the Court supports the proposition that class certification is not necessary"); Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 173 (S.D.N.Y. 2003) (denying class certification and not granting of motion to dismiss or motion to strike where subject matter was conferred through 28 U.S.C. § 1332 and not 28 U.S.C. § 1331). Contrary to Defendants' suggestion, the mere fact that the named Plaintiff herein alleges he lost over $440,000 does not at all indicate that every class member will claim such significant losses that they can presently afford to retain counsel to represent them individually to pursue Defendants.  It is for that very reason that a class action is superior.


## **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that this honorable court deny Defendants Motion to Dismiss or, in the alternative, allow Plaintiff to replead *sua sponte.*

This 24ᵗʰ Day of June, 2025.

Respectfully submitted,

 /s/ Ross M. Good

Ross M. Good, Esq. *Admitted Pro Hac Vice*
IL Bar No. 6312917 and FL Bar No. 0116405
Shawn M. Good Esq. *Admitted Pro Hac Vice*
IL Bar No. 632932
Attorneys for Plaintiff BRIAN HAUGER, individually
and on behalf of all others similarly situated
The Good Law Group
800 E. Northwest Hwy, Ste 814
Palatine, IL 60074
Ph: (847) 577-4476 Fax: (800) 709-1179
Ross@thegoodlawgroup.com
Shawn@thegoodlawgroup.com

Jeffrey Sonn, Esq. *Admitted Pro Hac Vice*
Attorney for Plaintiff BRIAN HAUGER, individually
and on behalf of all others similarly situated
FL Bar No. 773514
Sonn Law Group PA
19495 Biscayne Blvd Suite 607
Aventura, Fl 33180
Tel 305-912-3000
Fax 786-485-1501
Jsonn@Sonnlaw.com

Brian B. Pastor, Esq.
GA Bar No. 565860
Attorney for Plaintiff BRIAN HAUGER, individually
and on behalf of all others similarly situated
Sonn Law Group PA
3455 Peachtree Rd NE, Ste. 500
Atlanta, GA 30326
Tel: 305-912-3000 Ext. 538 Fax: 404-738-1505
E-Mail: BPastor@SonnLaw.com

**CERTIFICATION**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been

prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman

type face.

<u>/s/ Ross M. Good</u>
Ross M. Good, Esq.

## **CERTIFICATE OF SERVICE**

I, Ross Good, certify that on this 24th Day of June, 2025, I caused the foregoing memorandum in response to Defendants' Motion to Dismiss be served upon all parties by filing such by and through ECF.

/s/ Ross Good
Ross M. Good, Esq.