UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRIAN HAUGER,                )<br>                                            )<br>    Plaintiff,                    )<br>                                            )<br>v.                                         )<br>                                            )<br>SDWC FINANCIAL, LLC and )<br>MEREDITH BRUCE,          )<br>                                            )<br>    Defendants.                 ) | Civil Action Case No.<br><br>1:25-cv-01058-VMC |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Hauger's Response to Defendants' Motion to Dismiss fails to address the deficiencies Defendants SDWC Financial, LLC ("SDWC") and Meredith Bruce identify in their Motion to Dismiss and confirms that Plaintiff has sued Defendants because he cannot sue the real perpetrators of the alleged scheme: non-parties Drive Planning and its founder, Russell Todd Burkhalter.

*First*, Plaintiff attempts to bolster his federal securities laws claims by alleging that marketing brochures "functionally" fulfill the definition of a "prospectus," even though, by his own admission, these brochures contained no information that would be in a registration statement. [Doc. 24] ("Resp.") at 8. The Supreme Court has held that without registration information, a document is not a "prospectus" under federal securities law. Plaintiff also attempts to plead around

Rule 9(b)'s heightened requirements, which he cannot meet.

*Second*, Plaintiff fails to justify why his remaining state law claims should stand. Plaintiff cannot meet even Rule 8(a)'s standard for his negligent misrepresentation claim, much less Rule 9(b)'s. He points to little in [Doc. 20] the Amended Complaint ("AC") that would show Defendants owed him fiduciary duties. He fails to respond substantively to Defendants' arguments regarding professional negligence. And his attempts to justify alternative claims under unjust enrichment fail because there are written contracts and an adequate remedy at law.

*Finally*, Plaintiff fails to state viable class allegations. Recognizing his claims require individualized treatment, Plaintiff now contends Defendants' misrepresentations and omissions were "uniform" across putative class members. Resp. at 20. But this is unsupported by the AC. Similarly, Plaintiff fails to show that common questions of fact and law predominate based on the individualized issues. Lastly, Plaintiff fails to show why a class action is superior to other methods to fairly and efficiently adjudicate the controversy.

**1. <u>Count 1 and 2: Plaintiff Fails to State a Claim Under Section 12(a)(1) or 12(a)(2) of the Securities Act of 1933.</u>**

   a. <u>There Was No Prospectus Within the Meaning of Section 12(a)(2).</u>

Section 12(a)(2) requires Plaintiff to allege a misstatement or omission of material fact "by means of prospectus." 15 U.S.C. § 77l(a)(2). Plaintiff alleges that brochures publicly disseminated by Defendants "functionally serve[d] as a

2

prospectus," and thus satisfy Section 12(a)(2)'s requirement. Resp. at 8. First, nowhere in Plaintiff's AC does he allege Defendants distributed brochures to Plaintiff.

Second, even if Defendants had distributed the phantom brochures, a brochure is not a prospectus. While Plaintiff is correct that "a document need not be labeled as a 'prospectus' to qualify as one" (Resp. at 8), in *Gustafson v. Alloyd*, the Court rejected "a capacious definition" of "prospectus" (513 U.S. 561, 574 (1995)), and noted it is a "term of art." *Id*. at 562. The Court stated "whatever else 'prospectus' may mean, absent an overriding exemption, [a prospectus] *must* include the information contained in the registration statement." *Id*. at 569 (quoting 15 U.S.C. § 77j(a)) (emphasis added).

Here, Plaintiff alleges he ***did not*** have access to "information normally provided in a prospectus of a SEC registration statement." AC ¶¶ 79, 89. The phantom brochures do not satisfy the basic definition of "prospectus."

Further, federal courts have interpreted *Gustafson* to exclude marketing materials like those described in the AC. In *In re Edward D. Jones & Co., L.P. Sec. Litig.*, a court dismissed a Section 12(a)(2) claim because "[t]he Amended Complaint cites no formal prospectus, and the marketing materials in this case are not a substitute for the required prospectus." No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486 at *8 (E.D. Cal. July 9, 2019).

3

Plaintiff attempts to distinguish *Gustafson* by arguing that the marketing materials here "were promoted and sold to the public," whereas the securities in *Gustafson* were "limited to a closed, pre-identified group of investors." Resp. at 7. But the AC alleges the REAL agreements "were sold in a private offering[.]" AC ¶ 45.[1] Plaintiff cannot avoid dismissal by rewriting his AC in his response brief.

  b. <u>Rule 9(b) Applies to the Securities Claims, and Plaintiff Fails to Satisfy That Standard.</u>

Plaintiff argues that Rule 9(b)'s heightened pleading standards do not apply to Section 12(a)(2) claims because the cases cited by Defendants also involved Section 10b-5 claims. Resp. at 8. Plaintiff further points to boilerplate disclaimers in the AC that superficially renounce fraud to evade the purview of Rule 9(b). Resp. at 9 (citing AC ¶¶ 74, 83). Both arguments fail.

The Eleventh Circuit's 9(b) requirement for Section 12(a)(1) and 12(a)(2) claims is not contingent upon the inclusion of Section 10b-5 claims. That court has clearly stated "a § 11 or 12(a)(2) claim must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006). While not all Section 12(a)

---

[1] Plaintiff accuses Defendants of "misquot[ing]" the AC in reference to these "private offerings." Resp. 7. Defendants did no such thing. The sentence allegedly "misquoted" by Defendants was not a quote at all, and it was supported by accurate quotations of the AC. [Doc. 22-1] ("MTD") at 7.

4

claims are subject to this requirement, the claims here are because Plaintiff's allegations clearly sound in fraud. *See, e.g.,* AC ¶ 42 (alleging "Defendants induced Plaintiff Hauger to invest in REAL agreements").

Plaintiff attempts to circumvent Rule 9(b) by disclaiming any relation to fraud claims. Resp. at 9 (citing AC ¶¶ 74, 83). *Wagner* addressed such end-runs around Rule 9(b), using the example of plaintiffs alleging fraud claims alongside non-fraud claims: "it is not enough to claim that an alternative pleading saves the non-fraud claims from making an allegation of fraud because the risk to a defendant's reputation is not protected." *Id*. at 1278. The Court even provided an example, noting "[i]t would strain credulity to claim that Rule 9(b) should not apply in this allegation: The defendant is a no good defrauder, but, even if he is not, the plaintiff can still recover based on the simple untruth of the otherwise fraudulent statement." *Id*. Similarly, Plaintiff cannot avoid Rule 9(b) by adding boilerplate disclaimers and nominally arguing a theory of strict liability or negligence. *See id.* ("Nor is it enough to present a general disclaimer in an attempt to immunize the nonfraud claims from the Rule 9 requirements, for the same common sense reasons.").

Plaintiff contorts his pleading to avoid Rule 9(b) because he cannot meet its heightened standard. While he claims he identified "numerous false statements and omissions attributable to Defendants, and specified the manner in which those false

5

statements and omissions were made, when they were made, by whom, and to whom," Resp. at 12, he fails to cite a single example from the AC showing which statements he purportedly relied upon in his 12(a) claims. *See* MTD at 10-11. This was exactly why the court in *Barron v. Lampley* dismissed the plaintiff's claims there – because the plaintiff failed to "identify the specific statements they claim were misleading, who made them, when they were made, and why they were misleading." No. 4:15-CV-0038-HLM, 2016 WL 5334472, at *5 (N.D. Ga. Jan. 25, 2016).

  c. <u>Plaintiff Should Have Tendered or Offered to Tender the REAL Notes.</u>

Plaintiff argues that tender of the REAL notes is not a statutory requirement. Resp. at 4-5. He cites only Section 5 of the Securities Act. *See* Resp. at 5 (quoting 15 U.S.C. § 77e(c)). He ignores Section 12, which provides that any person who falls under the ambit of Section 12(a)(1) or 12(a)(2):

> [S]hall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, *upon the tender of such security*, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a) (emphasis added).

Courts have endorsed this requirement. *See Morin v. Trupin*, 747 F. Supp. 1051, 1063 (S.D.N.Y 1990) ("A requisite element of a Section 12(2) claim is the plaintiffs' tender of the securities they purchased"); *Sweeney v. Keystone Provident*

*Life Ins. Co.*, 578 F. Supp. 31, 33 (D. Mass. 1983) ("A plaintiff who still owns the security therefore has no choice: he can only get rescission and restitution, and his claim is contingent on tendering the security to defendant.").

Plaintiff tries to sidestep the tender requirement by arguing that it would be "futile" because the REAL notes are "worthless." Resp. at 5. Plaintiff cites no authority for the proposition that futility is an exception to the tender requirement. Plaintiff's failure to tender or offer to tender is a basis to dismiss his claims under Section 12(a)(1) and 12(a)(2).

**2. All Remaining Counts (Counts III-VII) Should Be Dismissed.**

   a. Plaintiff's Negligent Misrepresentation Arguments Fail to Meet Rule 8(a) or 9(b)'s Standards.

Plaintiff argues his negligent misrepresentation claims need not meet the heightened 9(b) pleading standard. Resp. at 12-13. While there is conflicting authority in this district, *see Intellicig USA LLC v. CN Creative Ltd*. No. 1-15-CV-01832-AT, 2016 WL 5402242 at *10 (N.D. Ga. July 13, 2016) (holding that "Plaintiffs failed to meet the heightened pleading standard of Rule 9(b)" in a claim for fraudulent inducement or negligent misrepresentation), Plaintiff's negligent misrepresentation claim would not even meet Rule 8(a)'s standard. *See* MTD at 12-13.

   b. Plaintiff Fails to Show Defendant Owed a Fiduciary Duty.

The AC lists nine alternative titles for Defendants in an effort to attach a

fiduciary duty. AC ¶ 106. Plaintiff now asks the Court to disregard those numerous titles and instead look at the facts and circumstances to determine whether a fiduciary duty exists. But the facts in the AC do not support a fiduciary duty.

In his Response, Plaintiff cites nine paragraphs in the AC arguing Defendants acted in a "financial advisory role." *See* Resp. at 14-15. Only five paragraphs are in the factual allegations (the rest are conclusory allegations in Count IV). Of the factual allegations, Plaintiff points to Bruce distributing marketing materials and promoting the REAL investments, reassuring investors like Plaintiff, emailing Burkhalter to seek answers, passing information to Plaintiff, and noting there were security measures in place to protect investors. AC ¶¶ 37-41. These facts fall far short of establishing a fiduciary duty.

Defendants occupied a role like the defendant in *Curry v. TD Ameritrade, Inc.*, No. 1:14-CV-1361-LMM, 2015 WL 11251449 (N.D. Ga. June 30, 2015). There, the court held the defendant did not owe a fiduciary duty because "the Complaint does not allege that [Defendant] served as an advisor to Plaintiffs with respect to their investment decisions or that TDA exercised discretion over Plaintiffs' accounts." *Id*. at *12. Similarly, the facts here show Defendants simply followed Plaintiff's wishes concerning the Drive Planning notes.

Plaintiff makes much of the Supreme Court's holding in *Holmes v. Grubman* that brokers may owe a fiduciary duty even in the context of a non-discretionary

account. 286 Ga. 636, 643 (2010). But Plaintiff conveniently excises the portion of the quote that describes *when* this heightened duty applies. The Court noted that this "heightened duty, even to the holder of a non-discretionary duty[,]" applies "when recommending an investment which the holder has previously rejected or as to which the broker has a conflict of interest." *Id*. at 643. Plaintiff alleges no such circumstances in this case. In fact, the text messages show how compliant Bruce was to Plaintiff's choices. *See* AC Ex. J at 3 (Bruce asks "Just checking to see if you [Plaintiff] or Sonia have come to any decisions yet" regarding the investment).

Plaintiff also alleges Defendants' failure to disclose sales commissions violate Regulation Best Interest ("Reg BI") duties, which in turn constitute a breach of fiduciary duty. Resp. at 15-16. As Plaintiff concedes, "Reg BI does not itself establish a fiduciary duty. . . ." Resp. at 15. And Reg BI does not apply here because Defendants are not broker dealers or associated persons. But more importantly, the AC makes no allegations that Defendants' receipt of commissions equates to a breach of fiduciary duty.

   c. Plaintiff's Professional Negligence Arguments Fail.

Plaintiff offers little in response to Defendants' arguments that he has failed to properly allege a claim of professional negligence against Bruce. The AC takes a scattershot approach to detailing Bruce's roles and the duties that attached to those roles. *See* MTD at 15-16. In response, Plaintiff summarily states in two sentences

9

that "Plaintiff properly pled" a professional negligence claim, and the AC details Bruce's breach of care. Resp. at 17-18. Plaintiff cites four conclusory paragraphs of the AC, which make generic allegations about duty, breach, causation, and damages, but supply no factual detail. *Id.* (citing AC ¶¶ 111-114). This is insufficient to state a professional negligence claim.

   d. Plaintiff's Unjust Enrichment Argument Fails.

Plaintiff argues the REAL agreements do not bar his unjust enrichment claim because they are between Plaintiff and a non-party. Resp. at 18. He further argues his unjust enrichment claim may be pursued as an alternative claim even if adequate remedies at law exist. *Id.* at 19. Both arguments fail.

The benefit Plaintiff allegedly conferred (*i.e.*, funds for the REAL notes) flowed from Plaintiff to non-party Drive Planning. *See* AC ¶¶ 42-49; Exs. B-H. Since Defendants were not the recipients of the funds, they were not unjustly enriched. Where a breach of contract remedy exists against a more suitable party, courts have dismissed unjust enrichment claims. *See Berg v. Nat'l Asset Mgmt. Agency*, No. 2:11-CV-00236-WCO, 2012 WL 13018419 at *12 (N.D. Ga. July 6, 2012).

Even if the Court accepts Plaintiff's attenuated theory that Plaintiff conferred a benefit on Defendants because Plaintiff invested in the REAL notes and Drive Planning subsequently paid Defendants a sales commission, the existence of the

REAL agreements bars a claim under unjust enrichment. Under Georgia law, "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Tidikis v. Network for Med. Commc'ns & Rsch. LLC*, 274 Ga. App. 807, 811 (2005). The key analysis is whether "any benefit conferred on the defendants was triggered by a provision in the contract." *Id*. Although this contract *can* be between the plaintiff and defendant in the lawsuit, it is not a requirement. *See Parks v. King*, Order on Carter & Assocs. Enterprises, Inc.'s MTD & Pls.' Mot. for Prelim. Inj., No. 2020CV342680 at *19 (Ga. Super. Ct. Fulton Cnty. May 4, 2021) (dismissing unjust enrichment claim where plaintiffs provided capital and services pursuant to contract between two defendants); *Berg v. Nat'l Asset Mgmt. Agency*, No. 2:11-CV-00236-WCO, 2012 WL 13018419 at *12 (N.D. Ga. July 6, 2012) (dismissing unjust enrichment claim because "[t]here [was] no allegation that a breach of contract suit against [non-party] would be an inadequate remedy.").

*Berg* also highlights the inadequacy of Plaintiff's second argument. There, the court dismissed an ex-employee's unjust enrichment claim against an asset management defendant who took control of the ex-employee's former employer, which was a non-party. The court found there was a contract between the plaintiff and employer, and the plaintiff had failed to allege that a breach of contract against

11

the non-party employer would be "an inadequate remedy." *Id*. at *12.[2]

Here, too, Plaintiff has not pled why his remedy at law would be inadequate. While Plaintiff may plead alternative claims for relief, this does not give him *carte blanche* to plead nonviable claims. This claim should be dismissed.

### 3. <u>Class Allegations</u>: Plaintiff Fails to State Viable Class Allegations.

a. <u>Commonality</u>

Plaintiff claims he has alleged sufficient common legal and factual questions to satisfy Fed. R. Civ. P. 23(a)(2)'s commonality requirement, specifically contending his securities claims are "a strict liability standard and simple issue." Resp. at 20. But this is not how the AC is pled. Both of Plaintiff's federal securities claims rely on allegations that "Defendants offered, sold, and/or solicited a security, namely the REAL agreements, by and through making untrue and/or misleading statements of material fact that, in his [sic] exercise of reasonable care, they should have known were false." AC ¶¶ 76, 85. To the extent Defendants' purported misstatements were made on an individual basis, proving this allegation will necessarily require individualized determinations that are inappropriate for class treatment.

Plaintiff recognizes this, because he now contends "Defendants engage[d] in

---

[2] Although the unjust enrichment claim in *Berg* was not styled as an alternative count, as the last remaining count the court adjudicated, it functionally served as alternative relief after the Court had dismissed all other claims.

12

uniform misrepresentations and omissions through uniform presentations and documents." Resp. at 20. But this is not what the AC says. The pleading shows Bruce communicated with her clients individually. Plaintiff attaches his private text messages with Bruce. *See* AC Ex. J. He also attaches a personalized presentation tailored to Plaintiff and his spouse. *Id.* Ex. A.

The only allegation in the AC that could be construed as pointing to "uniform promotional materials" states:

> On behalf of Burkhalter and Drive Planning, Bruce and SDWC offered the REAL investments for sale nationwide and accepted investments from international investors. The REAL brochure was promoted to prospective investors through the U.S. mail, by emailing it as a Portable Document Format (PDF), by reproducing it on the Drive Planning website (www.driveplanning.com), by handing it directly to prospective investors during in-person sales presentations, and by making hard copies available to Drive Planning's sales agents.

AC ¶ 34. But nowhere in the AC does Plaintiff allege that *Defendants* (as opposed to Drive Planning/Burkhalter) disseminated any uniform marketing materials.

Plaintiff also expresses concern that proof of individualized reliance "would effectively bar class certification in nearly every case." Resp. at 21. Not so. There are many types of claims that do not require proof of reliance and may be suitable candidates for class treatment. But claims requiring individual proof of reliance on allegedly fraudulent representations and practices – such as Plaintiff's negligent misrepresentation claim (Count III) – are not appropriate for a class action.

b. Predominance

Plaintiff claims without explanation that "[t]he only conceivable individualized issues that remain after the class allegations are adjudicated herein are individual damage calculations." Resp. at 22. This is belied by the allegations of the AC, which include many individualized allegations that go to liability, rather than damages. *See* MTD at 19-20 (citing multiple allegations regarding negligent misrepresentation and omissions); *id.* at 22-23 (fraud-based claims and unjust enrichment claims lack predominance).

Plaintiff also dismisses Defendants' citation to *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) for the proposition that unjust enrichment claims lack predominance, concluding the holding has "no precedential value" because it is based on Florida law. Resp. at 23. Unjust enrichment claims are substantially similar under either Florida or Georgia law. *Compare Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 280 (Fla. Dist. Ct. App. 2023) *with Campbell v. Ailion*, 338 Ga. App. 382, 387 (2016). Plaintiff does not explain why an unjust enrichment claim under Georgia law would have more common questions than a comparable claim under Florida law.

c. Superiority

Plaintiff does not dispute he sued Defendants for a large sum of money (over $440,000) and has an economic incentive to bring this suit, with or without a class.

14

Yet he attacks Defendants' authority on the "superiority" factor as "not relevant" because the issues there, "by nature, turn[ed] on the resolution of highly case-specific factual issues." Resp. at 24. This case, too, turns on case-specific factual issues, as discussed above. Plaintiff has alleged these individualized factual issues in his AC, and no amount of class discovery will change that.

Plaintiff also contends that just because he is claiming over $440,000 in damages does not mean every class member had comparable losses that they would be inclined to file suit individually. Resp. at 24. Again, this is contradicted by the allegations of the AC. Plaintiff alleges the SEC concluded that "Burkhalter and Drive Planning raised $372 million from [more than 2,500] investors and repaid investors $154.9 million from September 2020 through June 2024." AC ¶ 19. This means that approximately $217.1 million in funds are outstanding, or an average of $86,840 per investor. These can hardly be considered "negative value" claims that are best litigated as a class action, particularly in light of the individualized issues that must be resolved.

## CONCLUSION

Defendants request that this Court grant their Motion to Dismiss.

Respectfully submitted this 22nd day of July, 2025.

**s/ Jeffrey D. Horst**
Jeffrey D. Horst
Georgia Bar No. 367834

                        Jessica G. Cino
                        Georgia Bar No. 577837
                        Sada Jacobson Baby
                        Georgia Bar No. 307214
                        **KREVOLIN & HORST, LLC**
                        1201 W. Peachtree Street, N.W.
                        Suite 3500, One Atlantic Center
                        Atlanta, Georgia 30309
                        (404) 888-9700
                        horst@khlawfirm.com
                        cino@khlawfirm.com
                        baby@khlawfirm.com
                        *Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed ***Reply in Support of Defendants' Motion to Dismiss Amended Complaint*** by using the Court's CM/ECF filing system, which will automatically provide service of such filing to all parties of record.

This 22nd day of July, 2025.

**s/ Jeffrey D. Horst**
Jeffrey D. Horst
*Counsel for Defendants*
