## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

BRIAN HAUGER, individually and on )
behalf of all others similarly situated, )
                           )         Civil Action Case No.:
      Plaintiffs, )
                           )         1:25-cv-01058-VMC
v. )
                           )
SDWC FINANCIAL, LLC, a Florida )
limited liability corporation, and )
MEREDITH BRUCE, a Georgia individual, )
                           )
      Defendants )

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO STAY PROCEEDINGS

Plaintiff, Brian Hauger ("Hauger"), individually and on behalf of all others similarly situated, submits this Memorandum of Law in Response to Defendants' Motion to Stay the Proceedings:

## <u>INTRODUCTION</u>

Defendants ask this Court to halt a private investor damages case that targets their independent sales conduct—even though the Receivership Order reaches only Receivership Property and those "acting in such capacity" for the Receivership Entities. Because Defendants were not agents under Eleventh Circuit law, Plaintiffs do not seek Receivership assets, and any stay risks extinguishing time-sensitive securities claims, the motion fails under Landis and the Eleventh Circuit's prohibition on "immoderate" stays. *See Landis v. N. Am. Co*., 299 U.S. 248, 254–

55 (1936); *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264–65 (11th Cir. 2000).

Plaintiff brings this action based not on the conduct of the originators of the underlying Ponzi scheme but rather on Defendants' independent conduct, and Plaintiff therefore seeks relief wholly separate from the SEC enforcement action and the Receivership established by this Court's August 13, 2024 Order in *SEC v. Drive Planning, LLC and Russell Todd Burkhalter*, No. 1-24-cv-03583 (N.D. Ga. 2024) ("SEC Action"). That Order is expressly limited to "marshaling and preserving all assets of [SEC] Defendant Drive Planning, LLC ('Receivership Assets') and the assets of [SEC] Defendant Burkhalter and the Relief Defendants." See SEC Action, Doc. 10 ("Receivership Order").  The Receivership Order defines "Receivership Property" as "all property interests of the Receivership Defendant, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendant owns, possesses, has a beneficial interest in, or controls directly or indirectly" (Receivership Order ¶ 7.A.) The Receivership Order only stays "Ancillary Proceedings" "involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Receivership Defendant, including subsidiaries and partnerships; or, (d) the

2

Receivership Defendant's past or present officers, directors, managers, agents, or general or limited partners" (Id. ¶ 34.). Plaintiffs seek money damages from SDWC/Bruce personally—not turnover of estate assets—and Defendants are not alleged "agents acting in such capacity" (see § I(A)(1), infra). On the Order's face, this case is outside the stayed category.

Defendants' contention that this suit is an ancillary proceeding that should be stayed or enjoined under the Receivership Order is meritless. The equitable factors weigh heavily against an injunction or stay as either would only serve to prejudice Plaintiff by delaying discovery while memories fade.

Moreover, Defendants' contention that the Receiver's recently filed lawsuit against Defendants herein somehow further supports a stay is unavailing. Though the Receiver has indeed filed a lawsuit against Defendants and others similarly situated, that action is limited to recovering commissions from the named Defendants. *Murena v. CQ Consulting Services, et. al.*, No. 1-25-cv-04587 (N.D. Ga. 2025) ("Receiver Suit Complaint"). Plaintiff's claims, by contrast, are independent of the Receivership; Plaintiff seeks recovery of their full investments from these Defendants, whereas the Receiver seeks only commissions. The Receiver cannot stand in Plaintiff's shoes, as case law confirms. A stay would irreparably harm investors by extinguishing claims that are time-barred and unrelated to the Receivership.

## LEGAL STANDARD

A stay is an "exercise of judgment" that must "weigh competing interests and maintain an even balance," and the movant bears the burden—especially "if there is even a fair possibility" of prejudice to the non-movant. *Landis v. N. Am. Co*., 299 U.S. 248, 254–55 (1936). In affirming the Supreme Court's position in Landis, the 11th Circuit specified that "[a] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Trujillo v. Conover & Co. Communs., Inc*., 221 F.3d 1262, 1264 (11th Cir. 2000) (quoting *Landis* at 257); *see also CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982)*("[S]tay orders will be reversed when they are found to be immoderate [or] of an indefinite duration…[courts] cannot uphold such an indefinite or immoderate stay.").

"Generally speaking, a stay is not immoderate or unlawful if it is designed so that its force will be spent within reasonable limits…But if it goes beyond those reasonable limits the equation changes. In evaluating whether a stay is immoderate, this Court examines both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay…Whether a stay is immoderate

hinges on these two variables." *Marti v. Iberostar Hoteles Y Apartamentos S.L.*, 54 F.4th 641, 649 (11th Cir. 2022) (internal citations omitted).

## ARGUMENT

### I.    The Receivership Order does not require that this action be stayed or enjoined, and to do so would result in great harm to Plaintiff.

#### A. Defendants are not agents of Receivership Defendants

This Court ordered the appointment of the Receiver as "necessary and appropriate *for the purposes of marshaling and preserving all assets of Defendant Drive Planning, LLC ('Receivership Assets') and the assets of Defendant Burkhalter and the Relief Defendants*. Receivership Order at 1-2 (emphasis supplied). All civil legal proceedings of any nature, including "ancillary proceedings," involving either "receivership property," the Receivership Defendants; "the Receivership Defendant[s]' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature." *Id.* at ¶¶ 32-33. Defendants here are not "past or present officers, directors, managers, agents, or general or limited partners" of Receivership Defendants. *Id.* at ¶ 32.

Defendants insist they are "agents" of the Receivership Defendants, but the Order itself undermines their claim. It requires actual agents to turn over records to the Receiver, *Id.* at ¶ 8, and strips them of authority over Receivership operations and assets, *Id.* at ¶ 5. It is undisputed that Defendants here never had, and do not

have, any authority over Receivership operations or assets. Nor does the Order's reference to "agents" support Defendants' sweeping interpretation that it covers anyone loosely connected to Receivership Defendants. That reading would render the Order's detailed list of officers, directors, managers, partners, trustees, accountants, and employees superfluous. The better reading is the plain one: only those under the Receivership Defendants' control qualify as agents.

Under Eleventh Circuit law, "[t]he key element in establishing actual agency is the control by the principal over the actions of the agent…[a]nd it is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." *Marchisio v. Carrington Mortgage Services, LLC*, 919 F.3d 1288, 1311 (11th Cir. 2019). Actual agency requires "control by the principal over the actions of the agent." *Franza v. Royal Caribbean Cruises*, Ltd., 772 F.3d 1225, 1235–37 (11th Cir. 2014). Defendants were independent agents not under the control of Receiver Defendant. Labels and after-the-fact characterizations do not create an actual agency relationship.

Here, Receivership Defendants had no right to control Defendants' conduct— no say in who they solicited or what financial products they offered. Accordingly, Defendants were never agents of Receivership Defendants, and the Receivership Order does not apply.

**B. The Receivership Order does not require that this action be stayed.**

Courts within the Eleventh Circuit have adopted the widely accepted test articulated by the Ninth Circuit for lifting a stay of litigation where a receiver has been appointed. *See SEC v. Complete Bus. Sols. Grp., Inc.,* 2022 U.S. Dist. LEXIS 245729, 2022 WL 20703936 (S.D. Fla. 2022); *SEC v. Bkcoin Mgmt., LLC,* 2024 U.S. Dist. LEXIS 90262, 2024 WL 2874857 (S.D. Fla. 2024). In *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984), the Court held that the factors to consider are: (1) whether refusing to lift the stay genuinely preserves the status quo, examining whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *See SEC v. Complete Bus. Sols. Grp., Inc.,* No. 20-CIV-81205-RAR, 2022 U.S. Dist. LEXIS 245729, at *7 (S.D. Fla. Mar. 2, 2022) (Denying Motion to Lift Stay based on test from *Wencke*); *SEC v. Bkcoin Mgmt., LLC,* No. 23-CV-20719-SCOLA/GOODMAN, 2024 U.S. Dist. LEXIS 90262, at *18 (S.D. Fla. May 17, 2024)(finding the *Wencke* test for lifting a stay of litigation "has become widely adopted"). The Ninth Circuit's Wencke factors govern whether a receivership court should lift a receivership stay in the SEC Action itself at the request of a party there—not whether a different judge should halt a separate damages suit brought by non-parties to the receivership. See *SEC v. Wencke* (Wencke I), 622 F.2d 1363,

1369–70 (9th Cir. 1980) (upholding blanket stay entered in the receivership to protect estate assets). In sum, *Wencke* is about lifting a stay inside the receivership. Here, there's no such stay to lift, so *Landis* balancing applies. However, even assuming arguendo the *Wencke* Factors control, the factors are in Plaintiff's favor.

**1. *Wencke* Factor 1: whether refusing to lift the stay genuinely preserves the status quo, examining whether the moving party will suffer substantial injury if not permitted to proceed.**

The first factor—whether a stay is necessary to preserve the status quo requires the Court to balance the Receiver's interest in protecting the receivership estate against Plaintiff's right to pursue their claims. *See Bkcoin,* 2024 U.S. Dist. LEXIS 90262 at *18-19. As in *Bkcoin,* Defendants here are not parties to the SEC Action, are not subject to the asset freeze, and acted solely for their own financial benefit. Plaintiff seeks recovery of their full losses, not just commissions, and their claims neither overlap with the Receiver's nor implicate Receivership Assets.

Additionally, Plaintiff would face severe prejudice if this case were stayed. A stay risks barring undiscovered claims under the statute of limitations, and would hinder timely discovery while memories fade and documents are at risk being lost or destroyed. 15 U.S.C. § 77m (one-year limitation under §12(a)(1) of the Securities Act). Again, as in *Bkcoin,* this weighs heavily in Plaintiff's favor.

8

**2. *Wencke* Factor 2: the time in the course of the receivership at which the motion for relief from the stay is made.**

On the second factor, the timing of this action prejudices no one. Plaintiff is not seeking frozen assets, and, as in *Bkcoin,* the Receiver need not appear to protect them. *Bkcoin,* 2024 U.S. Dist. LEXIS 90262 at *19. Any recovery here will come from Defendants personally and fall outside Receivership Assets.

Also, as evidenced by the action recently filed by the Receiver against Defendants and other similar parties (*Murena, supra*), the Receiver has had more than a year to gather documents and information and has, in fact, taken advantage of that time to ensure that the Receivership Assets are protected. As will be discussed further in Section II., below, the filing of this action by the receiver does not in any way indicate that the Receivership Assets will be affected by the instant claims by Plaintiff.

**3. *Wencke* Factor 3: the merit of the moving party's underlying claim.**

Finally, Plaintiff's claims stand on their own, independent of the Receivership. In *Bkcoin,* the court found an action against a former officer of a receivership entity meritorious because it targeted his individual conduct. *Bkcoin* at 20-21. The same is true here.

The Receiver sues to claw back commissions as fraudulent transfers/unjust enrichment to the estate. Plaintiffs sue for their investment losses from Defendants' independent sales conduct. Receivers lack standing to pursue investors' tort claims;

those claims belong to investors. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296 ("It is axiomatic that a receiver obtains only the rights of action and remedies that were possessed by the person or corporation in receivership") *citing Freeman v. Dean Witter Reynolds*, 865 So. 2d 543, 551–53 (Fla. 2d DCA 2003). Simply put, there is no duplication in claims or damages to justify a stay. This Court has been guided by *Isaiah* already on deciding a similar standing issue and affirmed the limitations on the Receiver's rights to pursue claims. SEC Action, Doc. 152 at page 14 (this Court citing *Isaiah* and *Freeman* in saying "the individual customers who suffered injury as a result of the Ponzi scheme…may have rights to pursue claims against third parties."). The same application of *Isaiah* and *Freeman* applies here. The Receiver seeks to recover Receivership Assets while investors seek to litigate tort claims for investment losses. Thus, there is no basis to stay this action under the Receivership Order.

While a district court may bar suits against receivership entities, it also has broad authority to allow investors to pursue their own claims—claims the Receiver cannot assert. Even if the Receivership Order applied, the risk of time-bar prejudice is not speculative. The Securities Act's statute of repose in § 13 is not subject to equitable tolling—including during related proceedings. *CalPERS v. ANZ Secs., Inc.*, 582 U.S. 497, 507–13 (2017). Thus, allowing even a "temporary" stay can irretrievably cut off claims, which *Landis* forbids if there is a "fair

10

possibility" of harm. *Landis,* 299 U.S. at 255. Defendants' position could extinguish valid investor claims the Receiver has no standing to bring, effectively leaving Plaintiff without a remedy. The Receiver is not, and cannot be, a class representative for investors.

## II.    Contrary to Defendants' assertion, the Receiver's recent Lawsuit against Defendants and others does not Involve Overlapping Claims and Damages.

Though there may be some overlap between the facts of this case and the action filed by the Receiver against Defendants and others similarly situated, there is no overlap between the claims alleged and the damages sought. In *Murena v. CQ,* No. 1-25-cv-04587 (N.D. Ga. 2025) the Receiver only seeks clawback of commissions paid to Defendants herein and others. By contrast, Plaintiff seeks his full investment losses—claims that belong exclusively to them and over which the Receiver has no standing.

Contrary to Defendants' assertion, the "central claim" of the Receiver Suit has nothing to do with Drive Planning's reliance upon purported "agents" to promote and expand their scheme, and the damages sought have nothing to do with the returns promised to investors such as Plaintiff. Rather, the damages sought in the Receiver Suit relate solely to the commissions paid to Defendants. There is, quite simply, no substantial overlap that would justify a stay of the instant proceedings.

Preservation of ESI/documents is necessary to address the claims at issue in this case but are not relevant to the Receiver's duty to recover Receivership Assets. Should this Court consider allowing a stay for any duration, Plaintiff requests an order preserving ESI/documents.

## **CONCLUSION**

**WHEREFORE**, Plaintiff Brian Hauger respectfully requests that this Court deny Defendants' Motion to Stay the Proceedings.

Dated: September 9, 2025

Respectfully Submitted,

/s/Ross M. Good
Ross M. Good, Esq.
The Good Law Group
800 E. Northwest Hwy, Ste 814
Palatine, IL 60074
Ph: (847) 577-4476; Fax: (800) 709-1179
(IL Bar No. 6312917;
FL Bar No. 0116405)
Ross@thegoodlawgroup.com

Shawn M. Good Esq.
(IL Bar No. 632932)
The Good Law Group
800 E. Northwest Hwy, Ste 814
Palatine, IL 60074
Ph: (847) 577-4476; Fax: (800) 709-1179
Shawn@thegoodlawgroup.com

Jeffrey Sonn, Esq.
Sonn Law Group PA
19495 Biscayne Blvd Suite 607
Aventura, Fl 33180

Tel 305-912-3000; Fax 786-485-1501
FL Bar No. 773514
Jsonn@Sonnlaw.com

Brian B. Pastor, Esq.
Sonn Law Group
PA 3455 Peachtree Rd NE, Ste. 500
Atlanta, GA 30326
Tel: 305-912-3000 Ext. 538; Fax: 404-607-7121
GA Bar No. 565860
bpastor@sonnlaw.com

## **CERTIFICATION**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman typeface.

/s/ Ross M. Good
Ross M. Good, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I, Ross Good, certify that on this 9th day of September, 2025, I caused the foregoing Memorandum of Law in Response to Defendants' Motion to Stay Proceedings be served upon all parties by filing such by and through ECF.

<u>/s/ Ross M. Good</u>
Ross M. Good, Esq.